# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ADRIAN S. HOLMES,** | : CIVIL NO. 4:CV-10-1043 |
| | : |
| **Plaintiff** | : (Judge Rambo) |
| | : |
| v. | : |
| | : |
| **WARDEN BLEDSOE,** *et al.*, | : |
| | : |
| **Defendants** | : |

## MEMORANDUM

On May 14, 2010, Plaintiff Adrian S. Holmes ("Holmes"), an inmate presently confined at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"), commenced the above action *pro se* by filing a *Bivens*[1]-styled complaint against six (6) Defendants.[2] (Doc. 1.)

Holmes alleges that Defendants used excessive force and failed to provide adequate medical care in violation of the Eighth Amendment, and retaliated against him in violation of the First Amendment. Specifically, he alleges that, on March 1,

---

[1]*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* actions are the federal counterpart to § 1983 claims brought against state officials. *Egervary. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citing *Brown v. Philip Morris Inc.,* 250 F.3d 789, 800 (3d Cir. 2001)). "[C]ourts have generally relied upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a *Bivens* claim against federal officials." *Schrob v. Catterson*, 948 F.2d 1402, 1409 (3d Cir. 1991).

[2]Named as Defendants are USP Lewisburg Warden Bledsoe; Captain B. Trate; Special Investigative Agent ("SIA") F. Perrin; Associate Warden Young; Federal Bureau of Prisons ("BOP") Northeast Regional Director J.L. Norwood; and BOP Central Office General Counsel Kathleen Kenney.

2010, he sustained an eye injury after the use of force team attacked him in his cell, and that he was denied medical care for his injury. (Doc. 1 at 2 § IV. ¶ 1.) He further alleges that, after this incident, he was thrown back into his cell in restraints, and that an inmate worker was sent to attack him. (*Id.*) He claims that officers at USP Lewisburg "have been setting people up to get hurt" by "forcing them into cells with people that works [*sic*] for them." (*Id.* ¶ 2.) In addition, he alleges that the Warden is "the boss over everyone," the Captain "signs before the (force team) arrive," and Defendant SIA Perrin "is the one helping to try to run this." (*Id.* ¶ 3.) Finally, Holmes alleges that his life is in danger, and that "they are retaliating against me." (*Id.* at 3 § V. ¶ 3.)

Presently before the court is Defendants' motion to dismiss, or in the alternative, motion for summary judgment, (Doc. 14), and Holmes' "Motion to Supplement"[3] his complaint, (Doc. 26). For the reasons set forth below, summary judgment will be granted in favor of Defendants, and Holmes' request to supplement his complaint will be denied.

## I. **Background**

---

[3]Although Holmes' motion was docketed as a motion to amend or correct his complaint, he styles his motion as a motion to supplement, and indeed appears to be attempting to supplement his complaint with allegations as to events that occurred *after* he initiated this lawsuit. Therefore, we construe the motion as a request to supplement his complaint. *See* Fed. R. Civ. P. 15(d).

Holmes filed his complaint on May 14, 2010. (Doc. 1.) By order dated May 24, 2010, service of the complaint on Defendants was directed. (Doc. 6.) On August 3, 2010, Defendants filed their motion to dismiss, or in the alternative, motion for summary judgment, (Doc. 14). After obtaining leave to file a brief in excess of the fifteen (15) page limit, on August 17, 2010, Defendants filed a statement of facts, (Doc. 18), supporting exhibits, (Doc. 18-2), and a supporting brief, (Doc. 19), in which they argue, *inter alia*, that they are entitled to judgment as a matter of law because the undisputed record establishes that Holmes failed to properly exhaust his administrative remedies before bringing his claims.

One (1) day after Defendants filed their supporting materials, on August 18, 2010, Holmes filed a document entitled "Respond Motion to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Doc. 20.) This document was docketed as Holmes' brief in opposition to Defendants' motion to dismiss, or in the alternative, motion for summary judgment. It was apparent that Holmes had prepared this document, dated August 10, 2010, before he was served with Defendants' supporting materials on August 17, 2010. Therefore, by order dated August 30, 2010, the Honorable James F. McClure, Jr., to whom this case was then assigned, afforded Holmes the opportunity to file a supplementary brief responding to the arguments raised in Defendants' brief within fourteen (14) days. (*See* Doc. 21.)

3

The August 30 order also noted that Holmes had not filed a statement of material facts responding to Defendants' statement as required by Middle District of Pennsylvania Local Rule ("LR") 56.1, and therefore directed Holmes to file his required statement within fourteen (14) days. (*See id.*) The order advised Holmes that the requirements of LR 56.1 were set forth in the standing practice order issued in this case on May 14, 2010, (Doc. 4), that a copy of the rule was attached to that order, and warned him that his failure to file his statement as specified within LR 56.1 within the required time would result in the material facts set forth in Defendants' statement being deemed admitted. (*See id.*) Although the deadline to file his supplementary brief and statement of material facts has long passed, Holmes has not filed either document. Therefore, Defendants' motion is fully briefed and ripe for review.

On December 22, 2010, following Judge McClure's death, this case was verbally reassigned to the undersigned.[4] Thereafter, on January 13, 2011, Holmes filed a "Motion to Supplement" his complaint. We will consider Defendants' motion for summary judgment before turning to a discussion of Holmes' recently filed motion.

---

[4] On January 3, 2011, Holmes filed a document entitled "motion for transcript" in which he requests a transcript of the proceedings during which his case was reassigned. (Doc. 23.) No proceedings were conducted in connection with the reassignment of his case; rather, the case was reassigned pursuant to a verbal order issued by the Chief Judge.

## II. **Defendants' Motion for Summary Judgment**

### A. **Undisputed Facts**

In support of their motion for summary judgment, Defendants filed a statement of material facts in accordance with LR 56.1. (Doc. 18.) Although the August 30, 2010 order specifically directed Holmes to file his statement of material facts responding to Defendants' statement, and warned him of the consequences if he failed to do so, Holmes has not filed his opposing statement of material facts. Accordingly, all material facts set forth in Defendants' statement are deemed admitted. *See* LR 56.1.[5] Defendants' statement, (Doc. 18), and supporting materials, (Doc. 18-2)[6], establish the following undisputed facts material to Defendants' motion:

#### 1. **Facts Regarding Incident**

On March 1, 2010, a staff lieutenant informed Defendant Trate of Holmes' and his cell mate's disruptive behavior and threats toward staff. (Doc. 18 ¶ 3 (citing

---

[5] LR 56.1 provides, in relevant part, as follows: "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

[6] In support of their motion for summary judgment, Defendants have submitted the Declaration of Michael S. Romano, an Attorney Advisor at USP Lewisburg. (Doc. 18-2 at 3.) Attached to Romano's Declaration are copies of BOP records showing Holmes' sentencing information, (*id.* at 8-10), and administrative remedy history, (*id.* at 12-24); an Incident Report describing an incident at USP Lewisburg involving Holmes on March 1, 2010, (*id.* at 25-28); and a Health Services Clinical Encounter of Holmes completed on March 1, 2010, (*id.* at 30-31).

5

3/1/10 Incident Report, Doc. 18-2 at 25-28).) Defendant Trate requested permission from Defendant Bledsoe to assemble a use of force team to regain control of Holmes and his cell mate. (Doc. 18 ¶ 4.) Defendant Bledsoe authorized the assembly and use of force. (*Id.* ¶ 5.)

Holmes and his cell mate initially were responsive to the confrontation avoidance procedures and submitted to restraints. (*Id.* ¶ 6.) However, when removed from the cell, Holmes resisted and had to be placed against the wall for staff to regain control of him. (*Id.* ¶ 7.)

Holmes was medically assessed at the end of the incident and was found to have suffered a small abrasion to his upper right eye brow. (*Id.* ¶ 8 (citing 3/1/10 Health Services Clinical Encounter, Doc. 18-2 at 30-31).) Medical services reported that the abrasion had ceased bleeding by the time of the assessment and that no further treatment was required. (Doc. 18 ¶ 9 (citing Doc. 18-2 at 30-31).)

### 2. **Facts Regarding Exhaustion**

The BOP has a three (3) level administrative remedy process, which is a method where an inmate may seek formal review of a complaint related to any aspect of his confinement if less formal procedures have not resolved the problem. (Romano Decl., Doc. 18-2 at 3-4 ¶ 2).) The procedure is set forth at 28 C.F.R. § 542.10 *et seq.* (*Id.*)

To properly exhaust under this procedure, an inmate must file administrative remedies with the Warden, Regional Director, and General Counsel. (*Id.*) The inmate is required to first address his complaint by filing a BP-9 request to the Warden within twenty (20) calendar days following the date on which the events that form the basis for the complaint occurred. (Doc. 18 ¶ 12; Doc. 18-2 at 4 ¶ 2 (citing 28 C.F.R. § 542.14).)

If the inmate is dissatisfied with the Warden's response, he may appeal by filing a BP-10 request to the Regional Director within twenty (20) calendar days of the date that the Warden signed the response. (Doc. 18 ¶ 14; Doc. 18-2 at 4 ¶ 2 (citing 28 C.F.R. § 542.15).)

If the inmate is dissatisfied with the Regional Director's response, the inmate may pursue the final level of appeal by filing a BP-11 request to the General Counsel within thirty (30) days of the date that the Regional Director signed the response. (Doc. 18 ¶ 15; Doc. 18-2 at 4 ¶ 2 (citing 28 C.F.R. § 542.15).) Once an inmate receives a response to his appeal from the General Counsel, his administrative remedies have been exhausted as to the specific issues he has raised. (Doc. 18-2 at 4 ¶ 2.)

Attorney Romano has declared under penalty of perjury as follows:

Holmes has filed twenty-three (23) administrative remedies during his time in

BOP custody. (*Id.* at 5 ¶ 5; Administrative Remedy Data, Doc. 18-2 at 12-24.) Holmes completed the administrative remedy process only one (1) time on an issue which was unrelated to the issue raised in the complaint filed in this action. (*Id.*) The only remedy Holmes filed that could possibly be associated with the issues raised in his complaint was filed on May 11, 2010, at administrative Remedy Number 592904-A1. (Doc. 18 ¶ 19; Doc. 18-2 at 5 ¶ 5; Doc. 18-2 at 23 Abstract of Admin. Rem. No. 592904-A1.) In that remedy, Holmes alleged that staff abused their authority and were trying to kill him and that he had been assaulted. (Doc. 18-2 at 23.) BOP records show that Holmes filed this administrative remedy for the first time with the BOP Central Office. (*Id.*; Romano Decl., Doc. 18-2 at 5 ¶ 5.) Consequently, the remedy was rejected for filing at the wrong level. (*Id.*) Holmes' complaint in the instant action is dated April 28, 2010, and was filed on May 14, 2010. (Doc. 1.)

### B. Standards of Review

#### 1. Motion to Dismiss

Defendants seek dismissal of Holmes' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, Defendants seek summary judgment and have submitted evidentiary documents outside the pleadings in support of their motion. Federal Rule of Civil Procedure 12(d) provides:

**(d) Result of Presenting Matters Outside the Pleadings.** If, on a

> motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). In light of the fact that Defendants submitted matters outside the pleadings with the instant motion and styled it as seeking dismissal, or in the alternative, summary judgment, this court's August 30, 2010 order specifically directed Holmes to file his opposition in accordance with LR 56.1, including by filing a statement of material facts as required by LR 56.1. (*See* Doc. 21.) Thus, Holmes was given notice of the fact that Defendants are seeking summary judgment as an alternative to dismissal of his complaint, and he was provided with a reasonable opportunity to present material relevant to the motion, yet he chose not to do so. Therefore, the court will not exclude the evidentiary materials accompanying Defendants' motion and it will be treated solely as one seeking summary judgment.

### 2. **Motion for Summary Judgment**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

9

judgment as a matter of law." Fed.R.Civ.P. 56(c)[7]; *accord Saldana v. Kmart Corp.,* 260 F.3d 228, 231-32 (3d Cir.2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc..,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana,* 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.,* 142 F.R.D. 607, 609 (M.D. Pa. 1992).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Upon such a showing, the burden then shifts to the non-moving party to present "specific facts showing the existence of a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and

---

[7]We note that an amendment to the text of Fed. R. Civ. P. 56 became effective on December 1, 2010. The amendment did not result in a change to the standard (i.e. the word "issue" within subsection (c) has been changed to "dispute"). Even so, we quote the language of the version of the Rule that was in effect at the time Defendants moved for summary judgment as it is appropriate to dispose of the motion under that version. *See Fairclough v. Wawa, Inc.,* 2010 WL 5209327, at *3 n.3 (3d Cir. Dec. 23, 2010).

10

admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324 (internal quotations omitted); *see also Saldana,* 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex,* 477 U.S. at 322-23. "'Such affirmative evidence-regardless of whether it is direct or circumstantial-must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana,* 260 F.3d at 232 (quoting *Williams v. Borough of West Chester,* 891 F.2d 458, 460-61 (3d Cir.1989)).

### C. Discussion

The Prison Litigation Reform Act ("PLRA") requires inmates to present their claims through an administrative grievance process before filing suit in federal court. Specifically, section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

"'[I]t is beyond the power of this court- or any other- to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.'" *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr. Facility,* 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998) (citing *Weinberger v. Salfi,* 422 U.S. 749, 766 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis,* 204 F.3d at 71.

The PLRA also mandates that inmates "properly" exhaust administrative remedies ***before*** filing suit in federal court.[8] *Woodford v. Ngo,* 548 U.S. 81, 92 (2006). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. *Ahmed v. Sromovski*, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." *Tribe v. Harvey*, 248 F.3d 1152 (6th Cir. 2000) (citing *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-

---

[8]Because a plaintiff's failure to exhaust is an affirmative defense, a plaintiff is not required to allege in his complaint that he has exhausted administrative remedies. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). Rather, failure to exhaust must be pleaded and proven by the Defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93 (quoting *Porter,* 534 U.S. at 525)). Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis,* 372 F.3d 218, 227-32 (3d Cir. 2004) ("[P]rison grievance procedures supply the yardstick for measuring procedural default.") A procedural default, "either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." *Gallego v. United States,* Civil No. 1:02-CV-1157, 2005 WL 1653166, at *2 (M.D. Pa. July 8, 2005).

In this case, the undisputed factual record establishes that, for an inmate in BOP custody to properly exhaust a claim, he must pursue his issues through all three (3) of the required levels of the BOP's Administrative Remedy Program, namely by filing a BP-9 with the Warden, a BP-10 with the Regional Director, and finally, a BP-11 with General Counsel for the BOP. (*See* Romano Decl., Doc. 18-2 at 4 ¶ 2 (citing 28 C.F.R. §§ 542.14, 542.15).) Holmes admits in his complaint that the grievance process was not completed at the time he initiated this lawsuit. (*See* Doc. 1 at 1 § II. ¶¶ B, C.)

Although he alleges in his complaint (*see id.*), and in his brief in opposition to Defendants' motion (*see* Doc. 20 at 2), that he did not complete the grievance process because he did not receive responses to grievances he claims he submitted at each level, Defendants have submitted evidence in support of their request for summary judgment demonstrating that Holmes did not properly initiate the exhaustion process with respect to his claims. Specifically, the BOP records submitted by Defendants reveal that Holmes filed only one (1) administrative remedy that could possibly relate to the claims he raises in this action. (Doc. 18 ¶ 19; Doc. 18-2 at 5 ¶ 5; Doc. 18-2 at 23 Abstract of Admin. Rem. No. 592904-A1.) Further, the BOP records show that Holmes did not follow the required procedure to grieve his issues. Instead, he began the process by filing his remedy on May 11, 2010, which was after he prepared the complaint in this action on April 28, 2010 (*see* Doc. 1 at 3), and just several days before the complaint was filed on May 14, 2010.

In addition, the undisputed record establishes that Holmes filed his initial remedy not with the Warden, as required by the BOP's Administrative Remedy Procedure, but with the BOP Central Office. (*See* Doc. 18 ¶¶ 21-22; Doc 18-2 at 5 ¶ 5; Doc. 18-2 at 23.) Consequently, the remedy was rejected for being filed at the wrong level. (*See id.*) Holmes has failed to submit any evidence to show that there is a genuine issue of material fact as to his failure to follow the required procedure to

fully exhaust his administrative remedies. Therefore, Defendants are entitled to judgment as a matter of law.

### III. Holmes' Motion to Supplement Complaint

On January 13, 2011, long after Defendants' motion became ripe for disposition, Holmes submitted a "Motion to Supplement Complaint." (Doc. 26.) In his motion, Holmes provides details of an incident that allegedly occurred on May 30, 2010, after this action was initiated, and attempts to show that he has exhausted his administrative remedies with respect to his claims arising out of this incident by attaching various correspondence, affidavits, and copies of administrative remedies with dates ranging from June 2010 through October 2010. (*Id.* at 5-29.)

At the outset of his motion, Holmes states that he "has been exhausting his administrative remedies," but officials either are failing to answer his remedies or are stating that his remedies are untimely in an effort to engage in a "cover up." (*Id.* at 1.) Holmes then provides details about an incident that allegedly occurred on May 30, 2010, in which he claims he was attacked by members of the USP Lewisburg staff who are not Defendants in this action. (*Id.* at 1-2.) Although the allegations by Holmes that follow are not completely coherent, the gist of his complaint appears to be that a report was prepared documenting the May 30 incident, and that staff now

15

claim that the incident report has been lost.  (*Id.* at 3.)

In deciding whether to grant a motion to supplement a complaint, courts utilize the same standards as when evaluating a motion to amend a complaint. *See Hassoun v. Cimmino,* 126 F. Supp. 2d 353, 360 (D.N.J. 2000).  The decision to grant a motion to amend falls within the sound discretion of the court. *Foman v. Davis,* 371 U.S. 178, 182 (1962).  Leave may be denied where "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107, 116 (3d Cir. 2003).  It is also well established that a supplemental pleading cannot be used for the purpose of trying a new matter or a new cause of action. *See Brown v. Lindsay,* Civil No. 4:CV-07-1299, 2008 WL 3874308, at *2 (M.D.Pa. Aug. 14, 2008) (McClure, J.).

In the case at hand, we find that, notwithstanding the fact that the matters alleged by Holmes in his motion stem from events unrelated to the events set forth in the complaint, and involve different parties, where it is apparent from the record before the court that Holmes has not properly exhausted his administrative remedies with respect to his claims in the instant action, allowing him to supplement his complaint with new claims stemming from events that occurred subsequent to his having filed this action would be futile.  Therefore, we will deny his motion to

16

supplement without prejudice to any right Holmes may have to file a separate civil rights action raising the claims he refers to in his motion.[9]

## IV. **Conclusion**

Because there is no genuine issue of material fact as to Holmes' failure to properly exhaust his administrative remedies as to his claims set forth in his complaint before filing this action, Defendants are entitled to judgment as a matter of law. Further, allowing Holmes to supplement his complaint with new, unrelated claims would be futile, and therefore, Holmes' "Motion to Supplement" will be denied. An appropriate order will issue.

                                                  s/Sylvia H. Rambo
                                                  United States District Judge

Dated: January 26, 2011.

---

[9]The court expresses no opinion as to the merits, if any, of any civil rights claims Holmes may file.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ADRIAN S. HOLMES,** | **: CIVIL NO. 4:CV-10-1043** |
| **Holmes** | **: (Judge Rambo)** |
| v. | : |
| **WARDEN BLEDSOE,** *et al.*, | : |
| **Defendants** | : |

## O R D E R

In accordance with the foregoing memorandum, **IT IS HEREBY ORDERED THAT:**

1) The motion for summary judgment (Doc. 14) filed on behalf of Defendants is **GRANTED**.

2) The Clerk of Court is directed to **ENTER** judgment in favor of Defendants and against Holmes.

3) Plaintiff's "Motion to Supplement" (Doc. 26) is **DENIED** without prejudice.

4) The Clerk of Court is directed to **CLOSE** this case.

                                                        s/Sylvia H. Rambo
                                                       United States District Judge

Dated: January 26, 2011.